NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 12, 2007
Decided July 17, 2007

**Before**

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-3789

| | |
|---|---|
| ROOME JOSEPH,<br>    *Petitioner,* | Petition for Review of an Order of the<br>Board of Immigration Appeals |
| *v.* | No.  A79 286 874 |
| ALBERTO R. GONZALES, Attorney<br>General of the United States,<br>    *Respondent.* | |

## O R D E R

Roome Joseph, a Pakistani citizen who claims that her family will force her to marry against her will if she returns to Pakistan, challenges the BIA's denial of her motion to reopen removal proceedings. She contends that the BIA wrongly determined that she was not exempt from the 90-day time limitation for bringing her motion because it ignored her claim that circumstances had changed in Pakistan. Because the BIA failed to consider Joseph's contention, we grant her petition and remand.

In September 1998 Joseph arrived in the United States as a nonimmigrant visitor with her mother, father, and two younger brothers. Joseph was then 17 years old.  In 2000, some months after Joseph's visa expired, Joseph's mother Catherine (to whom we refer by her first name for clarity) applied for asylum,

withholding of removal, and protection under the Convention Against Torture, based on her fear that she and her children would be persecuted in Pakistan for their religious beliefs as Christians. Joseph, then 19 years old, and her brothers were derivative beneficiaries on Catherine's application. In May 2002 an Immigration Judge denied Catherine's application and permitted the Josephs to depart voluntarily. After Catherine's unsuccessful appeal to the BIA, she twice moved to reopen removal proceedings, each time claiming that conditions in Pakistan had worsened for Christians, but the BIA denied both motions.

In the meantime, Joseph's relationship with her family deteriorated, apparently because her family found her behavior to be inappropriate for a young woman of Pakistani descent. Her brothers beat her multiple times because they disapproved of her social relationships and she "suffered a great deal of physical and emotional abuse" at their hands. In 2004 she married an American, Darrin Affrunti, but her family's abuse continued. Joseph's relationship with her husband became rocky soon after they married, and they might have divorced, though the record is unclear.

The rest of the Joseph family left the United States for Pakistan shortly after Catherine's second motion to reopen was denied in August 2005, but Joseph remained. In the late summer or fall of 2005, Joseph spoke to various members of her family on the telephone, and they told her they would force her to marry a man of their choosing upon her return. Joseph responded that she would refuse to marry the man, and an argument ensued.

In November 2005 Joseph was convicted of using another person's credit card to withdraw money, and in April 2006, following her conviction, she was detained by the Department of Homeland Security. On the day that she was to be removed to Pakistan, Joseph moved for an emergency stay of removal, which the BIA granted, and for reopening of removal proceedings. Although a motion to reopen must be filed within 90 days after the final administrative decision ordering removal, 8 CFR § 1003.2(c)(2), Joseph argued that she was exempt from this time limit because she could present material evidence of changed circumstances in Pakistan that was unavailable at her previous hearing, 8 CFR § 1003.2(c)(3)(ii). Specifically she asserted that she fears returning to Pakistan because she believes she will be forced to marry there against her wishes. Alternatively, if she refuses to marry, she fears that she will be abused and disowned by her family and thus become vulnerable to rape or murder as a single Christian woman living alone.

To bolster her claim, Joseph submitted an affidavit from Gail Minault, a Professor of History at the University of Texas and an historian of India and Pakistan. Minault asserted that, based on the Joseph family's history of abuse, Joseph's relatives "would most certainly punish her for her dishonoring them,

either by marrying her off against her wishes, or worse: either having her killed or abandoning her to a fate worse than death: prostitution, which is no better than slavery." Minault also asserted that women in Pakistan who are disowned from their families are particularly vulnerable to abuse, and that abandoned Christian women suffer more severely. Joseph also introduced country reports and news articles showing that women in Pakistan are frequently victims of domestic violence, that honor killings of women by family members are common, and that forced marriage is prevalent.

The BIA denied Joseph's motion as untimely. In its analysis, the BIA misconstrued her motion as raising only a general fear of being harmed because she married *in the United States* without family permission. It concluded that her United States marriage was a changed personal circumstance rather than a changed condition in Pakistan and determined that she was ineligible for exemption from the 90-day limit for a motion to reopen.

In her petition for review, Joseph argues that the BIA erroneously ignored her contention that her family's presence in Pakistan, coupled with their threat to force her to marry, constitutes a changed condition in Pakistan. She claims that, though she raised this argument in her renewed asylum application, her declaration in support of her motion to reopen, and her briefs before the BIA, the BIA simply neglected to discuss it.

We agree that the BIA completely failed to address Joseph's theory that circumstances have changed *in Pakistan* warranting reopening of her removal proceedings. It determined that her only basis for claiming that her circumstances have changed was that she had married in the United States against her family's wishes; it did not even mention the threat of forced marriage in Pakistan in its decision. Thus its analysis does not show that it understood and gave thoughtful consideration to Joseph's argument. *See Mansour v. INS*, 230 F.3d 902, 908 (7th Cir. 2000). The government's brief on appeal similarly glosses over the issue and focuses instead on bolstering the rationale given by the BIA—that marriage in the United States is not a changed condition in Pakistan—but this argument misses the point. Joseph's contention is that the threat of forced marriage in Pakistan, not her marriage in the United States, is the changed condition that the Board should have addressed. The BIA abused its discretion because it ignored this argument. *See Gebreeyesus v. Gonzales*, 482 F.3d 952, 955-56 (7th Cir. 2007). Thus remand is warranted so that the BIA can address it in the first instance. *See Kebe v. Gonzales*, 473 F.3d 855, 857-58 (7th Cir. 2007).

We therefore GRANT the petition for review and REMAND to the BIA for further proceedings.